Eastern District of Pennsylvania

Notice of Electronic Claims Filing

The following transaction was received from NICHOLAS, BRIAN on 5/12/2023 at 10:52 AM EST

File another claim

| | |
|---|---|
| **Case Name:** | Charles H Prem |
| **Case Number:** | 23-10682-amc |
| **Creditor Name:** | Andrews Federal Credit Union<br>1 Corporate Drive, Suite 360<br>Lake Zurich, IL 60047 |
| **Claim Number:** | 9    Claims Register |
| **Amount Claimed:** | $216,526.14 |
| **Amount Secured:** | $216526.14 |
| **Amount Priority:** | |

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**Prem 23-10682 POC1.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=5/12/2023] [FileNumber=31298664-
0] [a19497499f27a6a07b5a2c33164c5f3ee6b91c391c4014207f570e28087213f864
4c7bb6c94d7c81f885d467c48b38589d7b5a87c696b6ad8116ecb631f16762]]

**Document description:**Exhibit 410a
**Original filename:**C:\fakepath\Prem 23-10682 POC 410a.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=5/12/2023] [FileNumber=31298664-
1] [5000aa7db6a8dc9ae69fddba316328696322c58f9ee623d57450f258dd0ff08da3
2b9fdc862fffc93496add32748e73b49cd688d9dd65e5b175c4299a0d5e139]]

**Document description:**Service List
**Original filename:**C:\fakepath\Prem 23-10682 POC cos.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=5/12/2023] [FileNumber=31298664-
2] [637bececc89abbd240d760d80919504d3b1216289edbd926e5380990192d120264
17a28f0bc9374a045a101b82f974fe35f50e1ae80bc3349f45caedb284b534]]

**Document description:**Exhibit escrow
**Original filename:**C:\fakepath\Prem 23-10682 POC ea.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=5/12/2023] [FileNumber=31298664-
3] [187b8cd489fa692742612c378c67ca4dc95ba1b0765c1819f7932203e34281c6a4
a37b9e9fd3d723e72840f94e566f8fbbf37a4b61366e026915ca397c6270c4]]

**Document description:**Exhibit loan docs
**Original filename:**C:\fakepath\Prem 23-10682 POC loan docs.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=5/12/2023] [FileNumber=31298664-
4] [0a036eb3155081363af63aea30fdb069a3dbd17635af38a035b974777ed10d4480
58bbf074b6b36ce94967c557ef25d09fa2938b678a2ba01c87f1f2e8177afd1]]

**23-10682-amc Notice will be electronically mailed to:**

MICHAEL PATRICK FARRINGTON on behalf of Creditor Andrews Federal Credit Union
mfarrington@kmllawgroup.com

MICHAEL PATRICK FARRINGTON on behalf of Creditor Green Lake Trust
mfarrington@kmllawgroup.com

LORRAINE GAZZARA DOYLE on behalf of Creditor Andrews Federal Credit Union
ldoyle@logs.com, cistewart@logs.com;LOGSECF@logs.com

BRAD J. SADEK on behalf of Debtor Charles H Prem
brad@sadeklaw.com, bradsadek@gmail.com;sadek.bradj.r101013@notify.bestcase.com;documents@sadeklaw.com

United States Trustee
USTPRegion03.PH.ECF@usdoj.gov

SCOTT F. WATERMAN [Chapter 13]
ECFMail@ReadingCh13.com

**23-10682-amc Notice will not be electronically mailed to:**

Synchrony Bank
c/o PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541

**Fill in this information to identify the case:**

Debtor 1    Charles H. Prem
(Spouse, if filing)

United States Bankruptcy Court for  he EASTERN District of Pennsylvania

Case number   23-10682 AMC

Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. **Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

| | | | |
| --- | --- | --- | --- |
| 1. **Who is the current creditor?** | **Andrews Federal Credit Union** | | |
| | Name of the current creditor (the person or entity to be paid for this claim) | | |
| | Other names the creditor used with the debtor _____ | | |

| | | |
| --- | --- | --- |
| 2. **Has this claim been acquired from someone else?** | ☒ No | |
| | ☐ Yes.  From whom? _____ | |

| | | |
| --- | --- | --- |
| 3. **Where should notices and payments to the creditor be sent?** Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| | **Andrews Federal Credit Union** Name | Name |
| | **1 Corporate Drive, Suite 360** Number        Street | Number        Street |
| | **Lake Zurich, IL 60047** City        State        Zip Code | City        State        Zip Code |
| | **800-669-0340** Contact phone | Contact phone |
| | Contact Email | Contact Email |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | |

| | | |
| --- | --- | --- |
| 4. **Does this claim amend one already filed?** | ☒ No | |
| | ☐ Yes.  Claim number on court claims registry (if known)_____ | Filed on _____ MM  /  DD  /  YYYY |

| | |
| --- | --- |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No |
| | ☐ Yes.  Who made the earlier filing? _____ |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No
☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor      **1290**

**7. How much is this claim?** **$216,526.14**

Does this amount include interest or other charges?

☐ No
☒ Yes Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001 (c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

**Money Loaned**

**9. Is all or part of the claim secured?**

☐ No
☒ Yes.   The claim is secured by a lien on property.
**Nature of property: 1471 East Wilt Street Philadelphia, PA 19125**

☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

Basis for perfection:   **Recorded Mortgage**
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                        $_____

Amount of the claim that is secured: **$216,526.14**

Amount of the claim that is unsecured:  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: **$50,387.95**
Annual Interest Rate (when case was filed) **5.250%**

☒ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☒ No
☐ Yes. Amount necessary to cure any default as of the date of the petition.       $_____

**11. Is this claim subject to a right of setoff?**

☒ No
☐ Yes. Identify the property: _____

242

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☒ No | |
|---|---|---|
| | ☐ Yes. *Check all that apply:* | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B) | |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(   ) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    **05/11/2023**
                    MM / DD / YYYY

/s/ **Brian C. Nicholas Esq. Attorney ID#  317240**

      Signature

Print the name of the person who is completing and signing this claim:

| Name | **Michael P. Farrington** | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | **Bankruptcy Attorney** | | |
| Company | **KML Law Group, P.C.** | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | **701 Market Street, Suite 5000** | | |
| | Number    Street | | |
| | **Philadelphia** | **PA** | **19106** |
| | City | State | ZIP Code |
| Contact phone | **(215) 825-6488** | Email | **bnicholas@kmllawgroup.com** |

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage As Of Date Of Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case Number: | 23-10682 AMC | Principal Balance | $173,987.51 | Principal & Interest | $34,788.96 | Principal & Interest | $966.36 |
| Debtor 1 | Charles H. Prem | Interest Due | $27,603.24 | Pre-petition Fees Due | $4,329.11 | | |
| Debtor 2 | | MIP Amount | $0.00 | Escrow Def For Funds Advanced | $10,606.28 | Monthly Escrow | $331.81 |
| Last 4 Digits to Identify | 1290 | Fees / Costs Due | $4,329.11 | Projected Escrow Shortage | $663.60 | | |
| Creditor | Andrews Federal Credit Union | Escrow Def for Funds Advanced | $10,606.28 | | | Mortgage Insurance | $0.00 |
| Servicer | Andrews Federal Credit Union | Less Total Funds on Hand | $0.00 | Less Total Funds on Hand | $0.00 | | |
| Fixed Accrual, Daily Simple Interest or Other | Fixed | TOTAL DEBT | $216,526.14 | Total Prepetition Arrears | $50,387.95 | Total Monthly Payment | $1,298.17 |

**PART 5: Loan Payment History From First Date of Default**

| | Account Activity | | | | | How Funds Were Applied / Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| mm/dd/yyyy | + | + | +/- | from the list | calculated | + | + | +/- | +/- | +/- | calculated | calculated | calculated | calculated | calculated |
| Date | Contractual Payment Amount | Funds Received | Amount Incurred | Description | Contractual Due Date | Prin Int & Esc Past Due Balance | Amount to Principal | Amount to Interest | Amount to Escrow | Amount to Fees or Charges | Unapplied funds | Principal Balance | Accrued Interest Balance | Escrow Balance | Fees/Charges Balance | Unapplied Funds Balance |
| | | | | | | 0.00 | | | | | | | 0.00 | 0.00 | 0.00 |
| 3/1/2020 | 1,197.43 | | | Monthly Payment Due | 3/1/2020 | 1,197.43 | | | | | | 174,191.78 | | 436.38 | 48.32 | |
| 3/24/2020 | | 1,245.75 | | Monthly Payment Posted | 4/1/2020 | 0.00 | 204.27 | 762.09 | 231.07 | (48.32) | | 173,987.51 | | 667.45 | 0.00 | 0.00 |
| 3/31/2020 | | 1.04 | | Interest on Escrow | 4/1/2020 | 0.00 | | | 1.04 | | | 173,987.51 | | 668.49 | 0.00 | 0.00 |
| 4/1/2020 | 1,197.43 | | | Monthly Payment Due | 4/1/2020 | 1,197.43 | | | | | | 173,987.51 | | 668.49 | 0.00 | 0.00 |
| 5/1/2020 | 1,197.43 | | | Monthly Payment Due | 4/1/2020 | 2,394.86 | | | | | | 173,987.51 | | 668.49 | 0.00 | 0.00 |
| 6/1/2020 | 1,197.43 | | | Monthly Payment Due | 4/1/2020 | 3,592.29 | | | | | | 173,987.51 | | 668.49 | 0.00 | 0.00 |
| 6/30/2020 | | 0.52 | | Interest on Escrow | 4/1/2020 | 3,592.29 | | | 0.52 | | | 173,987.51 | | 669.01 | 0.00 | 0.00 |
| 7/1/2020 | 1,197.43 | | | Monthly Payment Due | 4/1/2020 | 4,789.72 | | | | | | 173,987.51 | | 669.01 | 0.00 | 0.00 |
| 8/1/2020 | 1,197.43 | | | Monthly Payment Due | 4/1/2020 | 5,987.15 | | | | | | 173,987.51 | | 669.01 | 0.00 | 0.00 |
| 9/1/2020 | 1,197.43 | | | Monthly Payment Due | 4/1/2020 | 7,184.58 | | | | | | 173,987.51 | | 669.01 | 0.00 | 0.00 |
| 9/13/2020 | | | 1,803.00 | Prop Ins Disb | 4/1/2020 | 7,184.58 | | | (1,803.00) | | | 173,987.51 | | (1,133.99) | 0.00 | 0.00 |
| 9/30/2020 | | 0.25 | | Interest on Escrow | 4/1/2020 | 7,184.58 | | | 0.25 | | | 173,987.51 | | (1,133.74) | 0.00 | 0.00 |
| 10/1/2020 | 1,197.43 | | | Monthly Payment Due | 4/1/2020 | 8,382.01 | | | | | | 173,987.51 | | (1,133.74) | 0.00 | 0.00 |
| 11/1/2020 | 1,197.43 | | | Monthly Payment Due | 4/1/2020 | 9,579.44 | | | | | | 173,987.51 | | (1,133.74) | 0.00 | 0.00 |
| 12/1/2020 | 1,197.43 | | | Monthly Payment Due | 4/1/2020 | 10,776.87 | | | | | | 173,987.51 | | (1,133.74) | 0.00 | 0.00 |
| 1/1/2021 | 1,197.43 | | | Monthly Payment Due | 4/1/2020 | 11,974.30 | | | | | | 173,987.51 | | (1,133.74) | 0.00 | 0.00 |
| 2/1/2021 | 1,197.43 | | | Monthly Payment Due | 4/1/2020 | 13,171.73 | | | | | | 173,987.51 | | (1,133.74) | 0.00 | 0.00 |
| 2/25/2021 | | | 1,928.92 | Prop Tax Disb | 4/1/2020 | 13,171.73 | | | (1,928.92) | | | 173,987.51 | | (3,062.66) | 0.00 | 0.00 |
| 3/1/2021 | 1,197.43 | | | Monthly Payment Due | 4/1/2020 | 14,369.16 | | | | | | 173,987.51 | | (3,062.66) | 0.00 | 0.00 |
| 4/1/2021 | 1,197.43 | | | Monthly Payment Due | 4/1/2020 | 15,566.59 | | | | | | 173,987.51 | | (3,062.66) | 0.00 | 0.00 |
| 5/1/2021 | 1,197.43 | | | Monthly Payment Due | 4/1/2020 | 16,764.02 | | | | | | 173,987.51 | | (3,062.66) | 0.00 | 0.00 |
| 6/1/2021 | 1,197.43 | | | Monthly Payment Due | 4/1/2020 | 17,961.45 | | | | | | 173,987.51 | | (3,062.66) | 0.00 | 0.00 |
| 7/1/2021 | 1,197.43 | | | Monthly Payment Due | 4/1/2020 | 19,158.88 | | | | | | 173,987.51 | | (3,062.66) | 0.00 | 0.00 |
| 8/1/2021 | 1,197.43 | | | Monthly Payment Due | 4/1/2020 | 20,356.31 | | | | | | 173,987.51 | | (3,062.66) | 0.00 | 0.00 |
| 8/18/2021 | | | 1,633.00 | Prop Ins Disb | 4/1/2020 | 20,356.31 | | | (1,633.00) | | | 173,987.51 | | (4,695.66) | 0.00 | 0.00 |
| 9/1/2021 | 1,197.43 | | | Monthly Payment Due | 4/1/2020 | 21,553.74 | | | | | | 173,987.51 | | (4,695.66) | 0.00 | 0.00 |
| 10/1/2021 | 1,197.43 | | | Monthly Payment Due | 4/1/2020 | 22,751.17 | | | | | | 173,987.51 | | (4,695.66) | 0.00 | 0.00 |
| 11/1/2021 | 1,197.43 | | | Monthly Payment Due | 4/1/2020 | 23,948.60 | | | | | | 173,987.51 | | (4,695.66) | 0.00 | 0.00 |
| 12/1/2021 | 1,197.43 | | | Monthly Payment Due | 4/1/2020 | 25,146.03 | | | | | | 173,987.51 | | (4,695.66) | 0.00 | 0.00 |
| 1/1/2022 | 1,197.43 | | | Monthly Payment Due | 4/1/2020 | 26,343.46 | | | | | | 173,987.51 | | (4,695.66) | 0.00 | 0.00 |
| 2/1/2022 | 1,197.43 | | | Monthly Payment Due | 4/1/2020 | 27,540.89 | | | | | | 173,987.51 | | (4,695.66) | 0.00 | 0.00 |
| 2/7/2022 | | | | | 4/1/2020 | 27,540.89 | | | | | | 173,987.51 | | (4,695.66) | 48.32 | 0.00 |
| 2/8/2022 | | | 55.00 | FC Attorneys Fees | 4/1/2020 | 27,540.89 | | | | 55.00 | | 173,987.51 | | (4,695.66) | 103.32 | 0.00 |
| 2/23/2022 | | | 1,928.92 | Prop Tax Disb | 4/1/2020 | 27,540.89 | | | (1,928.92) | | | 173,987.51 | | (6,624.58) | 103.32 | 0.00 |
| 3/1/2022 | 1,633.64 | | | Monthly Payment Due | 4/1/2020 | 29,174.53 | | | | | | 173,987.51 | | (6,624.58) | 103.32 | 0.00 |
| 3/7/2022 | | | 15.00 | Property Inspection | 4/1/2020 | 29,174.53 | | | | 15.00 | | 173,987.51 | | (6,624.58) | 118.32 | 0.00 |
| 3/17/2022 | | | 15.00 | Property Inspection | 4/1/2020 | 29,174.53 | | | | 15.00 | | 173,987.51 | | (6,624.58) | 133.32 | 0.00 |
| 4/1/2022 | 1,633.64 | | | Monthly Payment Due | 4/1/2020 | 30,808.17 | | | | | | 173,987.51 | | (6,624.58) | 133.32 | 0.00 |
| 4/18/2022 | | | 48.32 | Late Charge | 4/1/2020 | 30,808.17 | | | | 48.32 | | 173,987.51 | | (6,624.58) | 181.64 | 0.00 |
| 4/22/2022 | | | 15.00 | Property Inspection | 4/1/2020 | 30,808.17 | | | | 15.00 | | 173,987.51 | | (6,624.58) | 196.64 | 0.00 |
| 5/1/2022 | 1,633.64 | | | Monthly Payment Due | 4/1/2020 | 32,441.81 | | | | | | 173,987.51 | | (6,624.58) | 196.64 | 0.00 |

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage As Of Date Of Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case Number: | 23-10682 AMC | Principal Balance | $173,987.51 | Principal & Interest | $34,788.96 | Principal & Interest | $966.36 |
| Debtor 1 | Charles H. Prem | Interest Due | $27,603.24 | Pre-petition Fees Due | $4,329.11 | | |
| Debtor 2 | | MIP Amount | $0.00 | Escrow Def For Funds Advanced | $10,606.28 | Monthly Escrow | $331.81 |
| Last 4 Digits to Identify | 1290 | Fees / Costs Due | $4,329.11 | Projected Escrow Shortage | $663.60 | | |
| Creditor | Andrews Federal Credit Union | Escrow Def for Funds Advanced | $10,606.28 | | | Mortgage Insurance | $0.00 |
| Servicer | Andrews Federal Credit Union | Less Total Funds on Hand | $0.00 | Less Total Funds on Hand | $0.00 | | |
| Fixed Accrual, Daily Simple Interest or Other | Fixed | TOTAL DEBT | $216,526.14 | Total Prepetition Arrears | $50,387.95 | Total Monthly Payment | $1,298.17 |

### PART 5: Loan Payment History From First Date of Default

| | | Account Activity | | | | | How Funds Were Applied / Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| mm/dd/yyyy | + | + | +/- | from the list | | calculated | + | + | +/- | +/- | +/- | calculated | calculated | calculated | calculated | calculated |
| Date | Contractual Payment Amount | Funds Received | Amount Incurred | Description | Contractual Due Date | Prin Int & Esc Past Due Balance | Amount to Principal | Amount to Interest | Amount to Escrow | Amount to Fees or Charges | Unapplied funds | Principal Balance | Accrued Interest Balance | Escrow Balance | Fees/Charges Balance | Unapplied Funds Balance |
| 5/16/2022 | | | 48.32 | Late Charge | 4/1/2020 | 32,441.81 | | | | 48.32 | | 173,987.51 | | (6,624.58) | 244.96 | 0.00 |
| 5/24/2022 | | | 15.00 | Property Inspection | 4/1/2020 | 32,441.81 | | | | 15.00 | | 173,987.51 | | (6,624.58) | 259.96 | 0.00 |
| 6/1/2022 | 1,633.64 | | | Monthly Payment Due | 4/1/2020 | 34,075.45 | | | | | | 173,987.51 | | (6,624.58) | 259.96 | 0.00 |
| 6/16/2022 | | | 50.00 | FC Attorneys Fees | 4/1/2020 | 34,075.45 | | | | 50.00 | | 173,987.51 | | (6,624.58) | 309.96 | 0.00 |
| 6/22/2022 | | | 15.00 | Property Inspection | 4/1/2020 | 34,075.45 | | | | 15.00 | | 173,987.51 | | (6,624.58) | 324.96 | 0.00 |
| 6/27/2022 | | | 265.00 | Title | 4/1/2020 | 34,075.45 | | | | 265.00 | | 173,987.51 | | (6,624.58) | 589.96 | 0.00 |
| 7/1/2022 | 1,633.64 | | | Monthly Payment Due | 4/1/2020 | 35,709.09 | | | | | | 173,987.51 | | (6,624.58) | 589.96 | 0.00 |
| 7/7/2022 | | | 970.00 | FC Attorneys Fees | 4/1/2020 | 35,709.09 | | | | 970.00 | | 173,987.51 | | (6,624.58) | 1,559.96 | 0.00 |
| 7/14/2022 | | | 15.00 | Property Inspection | 4/1/2020 | 35,709.09 | | | | 15.00 | | 173,987.51 | | (6,624.58) | 1,574.96 | 0.00 |
| 8/1/2022 | 1,633.64 | | | Monthly Payment Due | 4/1/2020 | 37,342.73 | | | | | | 173,987.51 | | (6,624.58) | 1,574.96 | 0.00 |
| 8/12/2022 | | | 15.00 | Property Inspection | 4/1/2020 | 37,342.73 | | | | 15.00 | | 173,987.51 | | (6,624.58) | 1,589.96 | 0.00 |
| 8/22/2022 | | | 1,875.00 | Prop Tax Disb | 4/1/2020 | 37,342.73 | | | (1,875.00) | | | 173,987.51 | | (8,499.58) | 1,589.96 | 0.00 |
| 9/1/2022 | 1,633.64 | | | Monthly Payment Due | 4/1/2020 | 38,976.37 | | | | | | 173,987.51 | | (8,499.58) | 1,589.96 | 0.00 |
| 9/14/2022 | | | 15.00 | Property Inspection | 4/1/2020 | 38,976.37 | | | | 15.00 | | 173,987.51 | | (8,499.58) | 1,604.96 | 0.00 |
| 10/1/2022 | 1,633.64 | | | Monthly Payment Due | 4/1/2020 | 40,610.01 | | | | | | 173,987.51 | | (8,499.58) | 1,604.96 | 0.00 |
| 10/17/2022 | | | 20.00 | Property Inspection | 4/1/2020 | 40,610.01 | | | | 20.00 | | 173,987.51 | | (8,499.58) | 1,624.96 | 0.00 |
| 11/1/2022 | 1,633.64 | | | Monthly Payment Due | 4/1/2020 | 42,243.65 | | | | | | 173,987.51 | | (8,499.58) | 1,624.96 | 0.00 |
| 11/15/2022 | | | 20.00 | Property Inspection | 4/1/2020 | 42,243.65 | | | | 20.00 | | 173,987.51 | | (8,499.58) | 1,644.96 | 0.00 |
| 11/17/2022 | | | 357.23 | Filing | 4/1/2020 | 42,243.65 | | | | 357.23 | | 173,987.51 | | (8,499.58) | 2,002.19 | 0.00 |
| 11/17/2022 | | | 680.00 | FC Attorneys Fees | 4/1/2020 | 42,243.65 | | | | 680.00 | | 173,987.51 | | (8,499.58) | 2,682.19 | 0.00 |
| 11/30/2022 | | | 1.92 | Mailing | 4/1/2020 | 42,243.65 | | | | 1.92 | | 173,987.51 | | (8,499.58) | 2,684.11 | 0.00 |
| 12/1/2022 | 1,633.64 | | | Monthly Payment Due | 4/1/2020 | 43,877.29 | | | | | | 173,987.51 | | (8,499.58) | 2,684.11 | 0.00 |
| 12/14/2022 | | | 20.00 | Property Inspection | 4/1/2020 | 43,877.29 | | | | 20.00 | | 173,987.51 | | (8,499.58) | 2,704.11 | 0.00 |
| 1/1/2023 | 1,633.64 | | | Monthly Payment Due | 4/1/2020 | 45,510.93 | | | | | | 173,987.51 | | (8,499.58) | 2,704.11 | 0.00 |
| 1/8/2023 | | | 690.00 | FC Attorneys Fees | 4/1/2020 | 45,510.93 | | | | 690.00 | | 173,987.51 | | (8,499.58) | 3,394.11 | 0.00 |
| 1/10/2023 | | | 95.00 | Service | 4/1/2020 | 45,510.93 | | | | 95.00 | | 173,987.51 | | (8,499.58) | 3,489.11 | 0.00 |
| 1/12/2023 | | | 20.00 | Property Inspection | 4/1/2020 | 45,510.93 | | | | 20.00 | | 173,987.51 | | (8,499.58) | 3,509.11 | 0.00 |
| 2/1/2023 | 1,633.64 | | | Monthly Payment Due | 4/1/2020 | 47,144.57 | | | | | | 173,987.51 | | (8,499.58) | 3,509.11 | 0.00 |
| 2/13/2023 | | | 20.00 | Property Inspection | 4/1/2020 | 47,144.57 | | | | 20.00 | | 173,987.51 | | (8,499.58) | 3,529.11 | 0.00 |
| 3/1/2023 | 1,633.64 | | | Monthly Payment Due | 4/1/2020 | 48,778.21 | | | | | | 173,987.51 | | (8,499.58) | 3,529.11 | 0.00 |
| 3/2/2023 | | | 2,106.76 | Prop Tax Disb | 4/1/2020 | 48,778.21 | | | (2,106.70) | | | 173,987.51 | | (10,606.28) | 3,529.11 | 0.00 |
| 3/9/2023 | | | 800.00 | FC Attorneys Fees | 4/1/2020 | 48,778.21 | | | | 800.00 | | 173,987.51 | | (10,606.28) | 4,329.11 | 0.00 |
| 3/9/2023 | | | | Current BK Filed | 4/1/2020 | 48,778.21 | | | | | | 173,987.51 | | (10,606.28) | 4,329.11 | 0.00 |

Andrews Federal Credit Union
1 Corporate Drive, Suite 360
Lake Zurich, IL 60047-8945

**ANTICIPATED ESCROW ACCOUNT DISBURSEMENTS**

| | |
|---|---|
| HAZARD INS | $1,875.00 |
| CITY TAX | $2,106.70 |
| **Total** | **$3,981.70** |

**ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT
AND CHANGE OF PAYMENT NOTICE PREPARED FOR**

**ESCROW ANALYSIS DATE: 03/14/2023**

Charles Prem
1471 E Wilt St

**NEW PAYMENT IS AS FOLLOWS:**

| | |
|---|---|
| Principal and Interest | $966.36 |
| Required Escrow Payment | $331.81 |
| Shortage/Surplus Spread | |
| Optional Coverages | |
| Buydown or Assistance Payments | |
| Other | |
| **Total Payment** | **$1,298.17** |
| **New Payment Effective Date:** | **04/01/2023** |

...lysis of your escrow account, and has adjusted your mortgage payment to reflect changes in your real estate taxes or property insurance. The escrow items to be disbursed from your account over the next twelve months are itemized above.

**ESCROW ACCOUNT PROJECTION FOR THE COMING YEAR**

The following estimate of activity in your escrow account from 04/2023 through 03/2024 is provided for your information. All payments we anticipate receiving as well as disbursements we anticipate making on your behalf are included, along with the Projected Escrow Account Balance, derived by carrying forward your current actual escrow balance. The Required Escrow Account balance displays the amount actually required to be on hand as specified by Federal law, State law and your mortgage documents, and may include a cushion of up to 1/6th of your Annual Disbursements. Please retain this statement for comparison with the actual activity in your account at the end of the next escrow account computation year.

| MONTH | PAYMENTS TO ESCROW ACCOUNT | MIP/PMI | TAXES | FLOOD | HAZ. INS. | SPECIAL | PROJECTED | REQUIRED |
|---|---|---|---|---|---|---|---|---|
| STARTING BAL | | | | | | | $3,382.97 | $663.60 |
| APR | $331.81 | | | | | | $3,714.78 | $995.41 |
| MAY | $331.81 | | | | | | $4,046.59 | $1,327.22 |
| JUN | $331.81 | | | | | | $4,378.40 | $1,659.03 |
| JUL | $331.81 | | | | | | $4,710.21 | $1,990.84 |
| AUG | $331.81 | | | | | | $5,042.02 | $2,322.65 |
| SEP | $331.81 | | | | $1,875.00 | | $3,498.83 | $779.46 |
| OCT | $331.81 | | | | | | $3,830.64 | $1,111.27 |
| NOV | $331.81 | | | | | | $4,162.45 | $1,443.08 |
| DEC | $331.81 | | | | | | $4,494.26 | $1,774.89 |
| JAN | $331.81 | | | | | | $4,826.07 | $2,106.70 |
| FEB | $331.81 | | | | | | $5,157.88 | $2,438.51 |
| MAR | $331.81 | | $2,106.70 | | $1,875.00 | | $3,382.99 | $663.62 * |
| Total | | | $2,106.70 | | $1,875.00 | | | |

*Indicates your projected low point of $3,382.99.  Your required reserve balance is $663.62.  The difference between the projected low point and required reserve balance is $2,719.37.  This is your escrow surplus amount.  The escrow surplus amount in your escrow account is $50.00 or more.  The surplus amount will be refunded to you in the form of a check that either (a) is included with this statement or (b) if your loan is current as of the date of the escrow analysis and your refund check is not included with this statement, it will be mailed to you within 30 days.

If you have questions regarding this analysis, please write our Member Service Department at Andrews Federal Credit Union, 1 Corporate Drive, Suite 360, Lake Zurich, IL 60047-8945 or call toll free 1-855-582-0232, Monday through Friday, 9:00 am to 6:00 pm, ET.

THIS DOCUMENT IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. IF YOU ARE IN BANKRUPTCY OR HAVE BEEN DISCHARGED IN BANKRUPTCY, THIS LETTER IS FOR INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT IN VIOLATION OF THE AUTOMATIC STAY OR THE DISCHARGE INJUNCTION OR AN ATTEMPT TO RECOVER ALL OR ANY PORTION OF THE DEBT FROM YOU PERSONALLY.

**Name: Charles Prem**

**This is a statement of actual activity in your escrow account from 02/2022 through 03/2023.  Last year's projections are next to the actual activity.  Your mortgage payment for the past year was $1,197.43 of which $966.36 was for principal and interest and $231.07 went into your escrow account.  An asterisk(*) indicates a difference from a previous estimate either in the date or the amount.  A 'Y' indicates a projected disbursement or payment.**

| MONTH | PAYMENTS TO PROJECTED | ESC. ACCT. ACTUAL | PAYMENTS FROM PROJECTED | ESC. ACCT. ACTUAL | DESCRIPTION | ESCROW BAL. PROJECTED | COMPARISON ACTUAL |
|---|---|---|---|---|---|---|---|
| STARTING BAL | | | | | | $0.00 | $0.00 |
| FEB | | $4,695.66-* | | $1,928.92  * | CITY TAX | $0.00 | $6,624.58- |
| AUG | | | | $1,875.00  * | HOME INS | $0.00 | $8,499.58- |
| MAR | | $13,989.25 *Y | | $2,106.70  *Y | CITY TAX | $0.00 | $3,382.97 |
| Total | $0.00 | $9,293.59 | $0.00 | $5,910.62 | | | |

**OVER THIS PERIOD, AN ADDITIONAL $0.00 WAS DEPOSITED INTO YOUR ESCROW ACCOUNT FOR INTEREST ON ESCROW.**

# NOTE

**September 25, 2019**  
**[Date]**

**Columbia,**  
**[City]**

**Maryland**  
**[State]**

**1471 E Wilt Street, Philadelphia, PA 19125**  
**[Property Address]**

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$175,000.00**     (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is   **Homeside Financial, LLC DBA Lower, a Licensed Lender.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  **5.250 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any Survival Event as defined in this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  **1st**  day of each month beginning on  **November 1, 2019.**      I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  **October 1, 2049,**       I still owe amounts under this Note. I will pay those amounts in full on that date, which is called the "Maturity Date." I will continue to pay those amounts both before and after any Survival Event as defined in this Note, until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.

I will make my monthly payments at  **5950 Symphony Woods Rd, Suite 312**  
**Columbia , MD 21044**

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S.  **$966.36.**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.



## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. I will pay the Note Holder back for those expenses paid by the Note Holder both before and after any Survival Event as defined in this Note.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11.  EFFECT OF SURVIVAL EVENTS

For purposes of this Note, "Survival Event" is defined as follows:

(a)  any default described in Section 6(B) of this Note;

(b)  Noteholder requiring me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount under Section 6(C) of this Note;

(c)  Noteholder requiring immediate payment in full of all sums secured by the Security Instrument;

(d)  the Maturity Date as defined in this Note;

(e)  the entry of any judgment against me under this Note; and

(f)  the entry of any judgment under the Security Instrument.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)

**CHARLES PREM**

**Lender: Homeside Financial, LLC DBA Lower**
**NMLS ID:**
**Loan Orig          es Dayton Juschka**
**NMLS ID:**

**ALLONGE TO THE NOTE:**

Borrower(s) Name:          **Charles  Prem**

Property Address:          **1471 E Wilt Street
                            Philadelphia, PA 19125**

Loan Amount:               **$48,250.00**

Note Date:                 **09/25/2019**

**PAY TO THE ORDER OF:**

**Andrews Federal Credit Union, WITHOUT RECOURSE**

**Homeside Financial, LLC dba Lower, a Licensed Lender**

Officer: Sandy Moreno, Closing/Post Closing Manager
Homeside Financial, LLC dba Lower

Case 23-10682-amc    Doc 17-1  eFiled 05/25/23  Entered 05/25/23: 53:03:53   Desc
Exhibit - Proof of Claim 12  Page 13 of 38    Rec Fee: $226.75
Receipt#: 19-102192
Records Department   Doc Code: M

When recorded, return to:
**Homeside Financial, LLC DBA Lower**
**ATTN: Final Document Department**
**5950 Symphony Woods Rd, Suite 312**
**Columbia, MD 21044**

**This document was prepared by:** Sonja Everett
**Homeside Financial, LLC DBA Lower**
**5950 Symphony Woods Rd, Suite 312**
**Columbia, MD 21044**

——————————— [Space Above This Line For Recording Data] ———————————

## MORTGAGE

**DEFINITIONS**
Words used in multiple sections of this document are defined below and other words are
defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words
used in this document are also provided in Section 16.
**(A) "Security Instrument"** means this document, which is dated
**September 25, 2019,**        together with all Riders to this document.
**(B) "Borrower"** is     **CHARLES PREM known of record as CHARLES PREM II,**
**UNMARRIED MAN.**

Borrower is the mortgagor under this Security Instrument.

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.                              Page 1 of 22                              PAEDEDL  0416
PAEDEDL (CLS)
09/25/2019 01:10 PM PST

(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E. Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS.

(D) **"Lender"** is    **Homeside Financial, LLC DBA Lower .**

Lender is **a Licensed Lender ,**                              organized and existing under the laws of **Maryland.**                                         Lender's address is
**5950 Symphony Woods Rd, Suite 312, Columbia, MD 21044.**

(E) **"Note"** means the promissory note signed by Borrower and dated
**September 25, 2019.**     The Note states that Borrower owes Lender **ONE HUNDRED SEVENTY FIVE THOUSAND AND NO/100\*** \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* Dollars (U.S. **$175,000.00**     )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **October 1, 2049.**

(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider          ☐ Second Home Rider
☐ Balloon Rider            ☐ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ Biweekly Payment Rider ☐ V.A. Rider
☐ Other(s) [specify]

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.



**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and

assigns of MERS the following described property located in the
**County** [Type of Recording Jurisdiction]
of **Philadelphia**
[Name of Recording Jurisdiction]:
**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF
AS "EXHIBIT A"**

which currently has the address of    **1471 E Wilt Street, Philadelphia,**

[Street] [City]

Pennsylvania **19125**                ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.                         Page 4 of 22                         PAEDEDL  0416
                                                                             PAEDEDL (CLS)
                                                                             09/25/2019 01:10 PM PST



THIS SECURITY INSTRUMENT combines uniform c̶o̶v̶e̶n̶a̶n̶t̶s̶ ̶f̶o̶r̶ ̶n̶a̶t̶i̶o̶n̶a̶l̶ ̶u̶s̶e̶ ̶a̶n̶d̶ non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied



first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to

Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a short-age of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instru-ment unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing

such agreement; (b) contests the lien in good faith by, or def████████████████████████████
the lien in, legal proceedings which in Lender's opinion operate to prevent the enforce-
ment of the lien while those proceedings are pending, but only until such proceedings
are concluded; or (c) secures from the holder of the lien an agreement satisfactory to
Lender subordinating the lien to this Security Instrument. If Lender determines that any
part of the Property is subject to a lien which can attain priority over this Security Instru-
ment, Lender may give Borrower a notice identifying the lien. Within 10 days of the date
on which that notice is given, Borrower shall satisfy the lien or take one or more of the
actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verifica-
tion and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or here-
after erected on the Property insured against loss by fire, hazards included within the term
"extended coverage," and any other hazards including, but not limited to, earthquakes
and floods, for which Lender requires insurance. This insurance shall be maintained in
the amounts (including deductible levels) and for the periods that Lender requires. What
Lender requires pursuant to the preceding sentences can change during the term of the
Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject
to Lender's right to disapprove Borrower's choice, which right shall not be exercised unrea-
sonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a
one-time charge for flood zone determination, certification and tracking services; or (b) a
one-time charge for flood zone determination and certification services and subsequent
charges each time remappings or similar changes occur which reasonably might affect
such determination or certification. Borrower shall also be responsible for the payment
of any fees imposed by the Federal Emergency Management Agency in connection with
the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain
insurance coverage, at Lender's option and Borrower's expense. Lender is under no obliga-
tion to purchase any particular type or amount of coverage. Therefore, such coverage shall
cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or
the contents of the Property, against any risk, hazard or liability and might provide greater
or lesser coverage than was previously in effect. Borrower acknowledges that the cost of
the insurance coverage so obtained might significantly exceed the cost of insurance that
Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall
become additional debt of Borrower secured by this Security Instrument. These amounts
shall bear interest at the Note rate from the date of disbursement and shall be payable,
with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be
subject to Lender's right to disapprove such policies, shall include a standard mortgage

clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

   **6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall

PENNSYLVANIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)
Ellie Mae, Inc.                                    Page 9 of 22                                    PAEDEDL  0416
                                                                                                   PAEDEDL (CLS)
                                                                                        09/25/2019 01:10 PM PST



continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and

rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer



selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this

Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this



Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.



**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions



are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

   **20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.
   Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that

time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**PENNSYLVANIA**–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01 (rev. 2/16)**
Ellie Mae, Inc.                                   Page 18 of 22                                   PAEDEDL   0416
                                                                                                 PAEDEDL (CLS)
                                                                                   09/25/2019 01:10 PM PST



**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Effect of Survival Events.** Both before and after any Survival Event, as defined below, Borrower shall:

(a) pay Funds for Escrow Items or pay Escrow Items directly as provided in Section 3 of this Security Instrument;

(b) pay the amounts and take the actions required by Section 4 of this Security Instrument;

(c) maintain insurance coverages and take the other actions required by Section 5 of this Security Instrument;

(d) maintain, repair and restore the Property and take the other actions required by Section 7 of this Security Instrument;

(e) if this Security Instrument is on a leasehold, comply with all the provisions of the lease;

(f) treat any amounts disbursed by Lender under Section 9 of this Security Instrument as additional debt of Borrower secured by this Security Instrument;

(g) maintain and pay the premiums for Mortgage Insurance, or make payments to Lender if Mortgage Insurance coverage is not available, and take the other actions required by Section 10 of this Security Instrument;

(h) permit the collection and application of miscellaneous proceeds as required by Section 11 of this Security Instrument;

(i) pay the fees required by Section 14 of this Security Instrument;

(j) continue to abide by the restrictions and take the actions required by Section 21 of this Security Instrument;

(k) pay any collection expenses under Section 22 of this Security Instrument; and

(l) pay interest at the rate payable from time to time under the Note.

"Survival Event" means any of the following:

(a) any default described in the Note;

(b) Lender requiring Borrower to pay immediately the full amount of Principal which has not been paid and all the interest that Borrower owes on that amount under the Note;

(c) Lender requiring immediate payment in full of all sums secured by this Security Instrument as described in the Note and Sections 18 and 22 of this Security Instrument;

(d) the Maturity Date as defined in the Note;

(e) the entry of any judgment against Borrower under the Note; and

(f) the entry of any judgment under this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ AKA _____ 11          9/25/19      (Seal)
CHARLES PREM AKA CHARLES PREM II                                    DATE

State of PENNSYLVANIA
County of PHILADELPHIA

This record was acknowledged before me on this, the 25 day of Sept,
2010, by CHARLES PREM AKA CHARLES PREM II .

_____
Signature of Notarial Officer
(STAMP)

Commonwealth of Pennsylvania - Notary Seal
PETRA PEREZ, Notary Public
Montgomery County
My Commission Expires August 14, 2023
Commission Number 1235956

Title of Officer    Notary Public

My commission expires    Aug 14 2023

Lender: Homeside Financial, LLC DBA Lower
NMLS I█
Loan O█████es Dayton Juschka
NMLS I█

Certificate of Residence

I, _____ *Tracy Biri* _____, do hereby certify
that the correct address of the within-named Mortgagee is P.O. Box 2026, Flint, MI 48501-2026.

Witness my hand this _25th_ day of _Sept 2019_

_____
Agent of Mortgagee

## LEGAL DESCRIPTION
### (Exhibit A)

Situate in the State of PA, County of Philadelphia, and City of Philadelphia, further described as follows:

ALL THAT CERTAIN LOT OR PIECE OF GROUND, WITH THE TWO STORY BRICK MESSUAGE OR TENEMENT THEREON ERECTED.

SITUATE ON THE NORTHEASTERLY SIDE OF WILT STREET (FORMERLY COOK STREET) COMMENCING AT THE DISTANCE OF 154 FEET 3 1/2 INCHES, SOUTHEASTWARDLY FROM THE SOUTHEASTERLY SIDE OF MEMPHIS STREET FOLLOWING SEVERAL COURSES OF THE SAID WILT STREET AND IN THE 18TH WARD OF THE CITY OF PHILADELPHIA.

CONTAINING IN FRONT OR BREADTH ON THE SAID WILT STREET 12 FEET AND EXTENDING IN LENGTH OR DEPTH OF THAT WIDTH NORTHEASTWARDLY AT RIGHT ANGLES TO THE SAID WILT STREET 70 FEET 4 INCHES TO SAID 4 FEET WIDE ALLEY.

BEING NO. 1471 EAST WILT STREET.

TOGETHER WITH THE FREE AND COMMON USE, RIGHT, LIBERTY AND PRIVILEGE OF THE ALLEY AFORESAID AS AND FOR A PASSAGEWAY AND WATERCOURSE IN COMMON WITH THE OWNERS AND OCCUPIERS OF THE OTHER LOTS OF GROUND BOUNDING THEREON.

BEING THE SAME PREMISES WHICH SUSAN M. CIESLINSKI, INCORRECTLY RECITED ON PREVIOUS DEED AS SUSAN M. CHIESLINSKI BY DEED DATED 10/5/2005 AND RECORDED 11/16/2005 IN PHILADELPHIA COUNTY AS DOCUMENT NO. 51314366 CONVEYED UNTO ALISSA MASHMAN, IN FEE.

BEING THE SAME PREMISES WHICH ALISSA BARON F/K/A ALISSA MASHMAN BY DEED DATED 9/20/2007 AND RECORDED 10/2/2007 IN PHILADELPHIA COUNTY AS DOCUMENT NO. 51782939 CONVEYED UNTO ALISSA BARON AND MATTHEW BARON, WIFE AND HUSBAND, AS TENANTS BY THE ENTIRETY, IN FEE.

Being the same property conveyed from MATTHEW BARON AND ALISSA BARON to CHARLES PREM II on October 13, 2015 in Official Records 52975838 of the Philadelphia County Records.

Property Address: 1471 East Wilt Street, Philadelphia, PA 19125

Prepared By and Return To: Client Services
KML LAW GROUP, P.C.
BNY Independence Center - Suite 5000
701 Market Street
Philadelphia, PA 19106-1532
215-627-1322

MERS PHONE#: 888-679-6377
PO Box 2026, Flint, MI 48501-2026, 1901 E. Voorhees Street, Suite C, Danville, IL 61834

## ASSIGNMENT OF MORTGAGE

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR HOMESIDE FINANCIAL, LLC DBA LOWER, ITS SUCCESSORS AND ASSIGNS** (Assignor), for other good and valuable consideration, the receipt of which is acknowledged, does grant, assign and transfer to **ANDREWS FEDERAL CREDIT UNION** (Assignee), all of its right, title and interest, as holder of, in, and to the following described mortgage and property:
Executed **CHARLES PREM, KNOWN OF RECORD AS CHARLES PREM II, UNMARRIED MAN**, Mortgagor(s); to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR HOMESIDE FINANCIAL, LLC DBA LOWER, ITS SUCCESSORS AND ASSIGNS.** Bearing date of: **September 25, 2019**; Amount Secured: **$175,000.00**; Recorded on October 10, 2019; in **Instrument # 53576643**; in the Recorder of Deeds Office of **Philadelphia** County, Commonwealth of Pennsylvania ("Mortgage")

Property: **1471 East Wilt Street, Philadelphia, PA  19125**

AS FURTHER DESCRIBED IN EXHIBIT "A", ATTACHED AND INCORPORATED INTO THIS ASSIGNMENT.
Described in the Mortgage endorsed to the Assignee and all moneys due and to become due on the Mortgage, with interest. Assignee its successors, legal representatives and assigns shall hold all rights under the Mortgage forever, subject however, to the right and equity of redemption, if any, of the maker(s) of the Mortgage, their heirs and assigns forever.
Assignor, by its appropriate corporate officer, has executed this Assignment of Mortgage on this 3rd day of August , 20 22 .

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR HOMESIDE FINANCIAL, LLC DBA LOWER, ITS SUCCESSORS AND ASSIGNS

Name: Malee Schmitt
Title: Vice President
Date: August 03, 2022

I hereby certify the address of the Assignee is:
5711 Allentown Road
Suiteland, MD 20746

Signature: _____
Print Name: Malee Schmitt
Title: Vice President

ss:
STATE OF Maryland ) COUNTY OF Prince Georges )
BE IT REMEMBERED, that on this 3rd day of August , 2022 , before me, the subscriber, a Notary Public personally appeared
Name: Malee Schmitt
Title: Vice President
   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR HOMESIDE FINANCIAL, LLC DBA LOWER, ITS SUCCESSORS AND ASSIGNS
officer of Assignor, who I am satisfied is the person who signed the within instrument and they acknowledged that they signed and delivered the same as such officer aforesaid, and that the within instrument is the voluntary act and deed of such corporation made by virtue of a Resolution of its Board of Directors.

Notary Public
My commission expires:

Page 1 of 2

JAMES B ALDREDGE JR
Notary Public-Maryland
Prince George's County
My Commission Expires
February 22, 2026

# Exhibit A

Situate in the State of PA, County of Philadelphia, and City of Philadelphia, further described as follows:

ALL THAT CERTAIN LOT OR PIECE OF GROUND, WITH THE TWO STORY BRICK MESSUAGE OR TENEMENT THEREON ERECTED.

SITUATE ON THE NORTHEASTERLY SIDE OF WILT STREET (FORMERLY COOK STREET) COMMENCING AT THE DISTANCE OF 154 FEET 3 1/2 INCHES, SOUTHEASTWARDLY FROM THE SOUTHEASTERLY SIDE OF MEMPHIS STREET FOLLOWING SEVERAL COURSES OF THE SAID WILT STREET AND IN THE 18TH WARD OF THE CITY OF PHILADELPHIA.

CONTAINING IN FRONT OR BREADTH ON THE SAID WILT STREET 12 FEET AND EXTENDING IN LENGTH OR DEPTH OF THAT WIDTH NORTHEASTWARDLY AT RIGHT ANGLES TO THE SAID WILT STREET 70 FEET 4 INCHES TO SAID 4 FEET WIDE ALLEY.

BEING NO. 1471 EAST WILT STREET.

TOGETHER WITH THE FREE AND COMMON USE, RIGHT, LIBERTY AND PRIVILEGE OF THE ALLEY AFORESAID AS AND FOR A PASSAGEWAY AND WATERCOURSE IN COMMON WITH THE OWNERS AND OCCUPIERS OF THE OTHER LOTS OF GROUND BOUNDING THEREON.

BEING THE SAME PREMISES WHICH SUSAN M. CIESLINSKI, INCORRECTLY RECITED ON PREVIOUS DEED AS SUSAN M. CHIESLINSKI BY DEED DATED 10/5/2005 AND RECORDED 11/16/2005 IN PHILADELPHIA COUNTY AS DOCUMENT NO. 51314366 CONVEYED UNTO ALISSA MASHMAN, IN FEE.

BEING THE SAME PREMISES WHICH ALISSA BARON F/K/A ALISSA MASHMAN BY DEED DATED 9/20/2007 AND RECORDED 10/2/2007 IN PHILADELPHIA COUNTY AS DOCUMENT NO. 51782939 CONVEYED UNTO ALISSA BARON AND MATTHEW BARON, WIFE AND HUSBAND, AS TENANTS BY THE ENTIRETY, IN FEE.

Being the same property conveyed from MATTHEW BARON AND ALISSA BARON to CHARLES PREM II on October 13, 2015 in Official Records 52975838 of the Philadelphia County Records.

Property Address: 1471 East Wilt Street, Philadelphia, PA 19125

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Charles H. Prem | CHAPTER 13 |
| Debtor(s) | NO. 23-10682 AMC |

CERTIFICATE OF SERVICE

I, the undersigned, attorney for Andrews Federal Credit Union do hereby certify that true and correct copies of the foregoing Proof of Claim have been served <u>May 12, 2023</u>, by electronic filing upon those listed below:

<u>Attorney for Debtor(s)</u>
Sadek, Brad J.
1500 JFK Boulevard
Ste 220
Philadelphia, PA 19102

***Bankruptcy Trustee***
Scott F. Waterman
2901 St. Lawrence Ave.
Suite 100
Reading, PA 19606

Date: <u>May 12, 2023</u>

**/s/Brian C. Nicholas Esq.**
Brian C. Nicholas Esq.
Attorney I.D. 317240
KML Law Group, P.C.
BNY Mellon Independence Center
701 Market Street, Suite 5000
Philadelphia, PA 19106
(215) 825-6488
bnicholas@kmllawgroup.com

244